UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC PAUL STEVENS, | ) No. SACV 15-1344 AS |
| Plaintiff, | ) |
| v. | ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) **MEMORANDUM OPINION** |
| Defendant. | ) |

**PROCEEDINGS**

On April 9, 2013, Plaintiff Eric Paul Stevens ("Plaintiff") applied for supplemental security income based on a disabling condition beginning November 29, 2009. (AR 194). On August 20, 2014, Administrative Law Judge ("ALJ") Sally C. Reason heard testimony from Plaintiff. (AR 37-47). A supplemental hearing was held on February 23, 2015, and the ALJ heard testimony from medical expert ("M.E.") Lynne Jahnke and vocational expert Ronald Hatakeyama.

(AR 48-59). On February 25, 2015, the ALJ denied Plaintiff benefits in a written decision. (AR 21-30). The Appeals Council denied review of the ALJ's decision. (AR 1-3).

On August 24, 2015, Plaintiff filed a Complaint pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) alleging that the Social Security Administration erred in denying benefits. (Docket Entry No. 1). On January 13, 2016, Defendant filed an Answer to the Complaint, (Docket Entry No. 14), and the Certified Administrative Record ("AR"), (Docket Entry No. 15). The parties have consented to proceed before a United States Magistrate Judge. (Docket Entry Nos. 10, 12). On March 25, 2016, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claims. (Docket Entry No. 17).

For the reasons discussed below, the decision of the Administrative Law Judge is AFFIRMED.

**SUMMARY OF ALJ'S DECISION**

The ALJ applied the five-step process in evaluating Plaintiff's case. (AR 21-23). At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after the date of his application. (AR 23). At step two, the ALJ found that Plaintiff's severe impairments included degenerative disc disease of the lumbar spinal area, diverticulosis, hepatitis C, ventral hernia, and obesity. (AR 23). At step three, the ALJ found that Plaintiff's

impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 23-24).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to "lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk up to two hours in an eight-hour workday (no more than thirty minutes continuously), and sit without restriction, with no climbing ladders, ropes, or scaffolds, no more than occasional postural activities (i.e., balancing, stooping, kneeling, crouching, crawling, or climbing ramps or stairs); no exposure to unprotected heights; and no concentrated exposure to vibrations or extreme cold or heat."  (AR 24).  The ALJ also determined that Plaintiff required "the ability to take a standing break once per hour (approximately five minutes in duration) at his workstation."  (AR 24).  In formulating an RFC, the ALJ summarized medical evidence including a July 2011 opinion by examining physician Karl Epstein, M.D.  (AR 25, 27-28).  The ALJ gave Dr. Epstein's opinion "significant probative weight," observing that Dr. Epstein had stated that Plaintiff could "work with proper motivation including[] sitting, standing and walking no greater than [two] hours."  (AR 28) (second alteration in original).

At steps four and five, the ALJ determined that Plaintiff had no past relevant work but could work as a telephone information clerk or a lens inserter, optical goods industry.  (AR 28-30).  Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR 30).

**STANDARD OF REVIEW**

This court reviews the Administration's decision to determine if the decision is free of legal error and supported by substantial evidence. See Brewes v. Commissioner of Soc. Sec. Admin., 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff's contends that Dr. Epstein assessed limitations inconsistent with Plaintiff performing full time work, and the ALJ was therefore required to either provide specific and legitimate reasons for partially rejecting Dr. Epstein's opinion or fully credit the opinion and find Plaintiff disabled. (See Joint Stip. at 5-8).

\\
\\
\\
\\

**DISCUSSION**

**A.   The ALJ Properly Evaluated Dr. Epstein's Opinion**

Plaintiff argues that Dr. Epstein's opinion, which limited Plaintiff to "sitting, standing and walking no greater than [two] hours," can be read to either limit Plaintiff's sitting, standing, and walking to a "combined total time" of two hours or to limit these activities to two hours each, for a combined total of six hours. (Joint Stip. at 5-6). Because either of these interpretations limits Plaintiff's sitting, standing, and walking to less than eight hours per day, Plaintiff contends that Dr. Epstein assessed limitations that are inconsistent with full-time work. (Id. at 6). Plaintiff maintains that the ALJ was required to either provide specific, legitimate reasons for rejecting Dr. Epstein's opinion or to accept the opinion in full and find Plaintiff disabled. (Id. at 6-7).

An ALJ must take into account all medical opinions of record. 20 C.F.R. §§ 404.1527(b), 416.927(b). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). When a treating or examining physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is contradicted by another doctor, it may only be rejected if the ALJ provides "specific and

legitimate" reasons supported by substantial evidence in the record. Id. at 830-31; see also Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008).

On July 25, 2011, Plaintiff underwent a consultative physical examination before Dr. Epstein. (AR 477-78). Plaintiff complained of flat foot, compressed vertebrae and ventral hernia, obesity, hepatitis C, and pain while sitting. (AR 477). Dr. Epstein performed a physical examination, noting "tenderness over T12 and L1" but "no significant pain over the lumbar spine." (AR 477). Dr. Epstein also observed "sacroiliac joint pain with functional range of motion." (AR 477). Dr. Epstein diagnosed Plaintiff with obesity and a history of hepatitis C. (AR 477). Under "Discussion," Dr. Epstein wrote that Plaintiff "should be able to work with proper motivation including sitting, standing, and walking no greater than [two] hours." (AR 478).

During the supplemental ALJ hearing, the M.E. testified that she had reviewed Plaintiff's medical records and opined that Plaintiff's impairments included chronic low back pain with degenerative disc disease. (AR 52). Based on her review, the M.E. concluded that Plaintiff had "no limitations to sitting," although she stated that it would be "nice" to afford Plaintiff the opportunity to stand for less than five minutes once per hour to "stretch his back out" and alleviate his low back pain. (AR 54). The M.E. otherwise recommended limitations consistent with those ultimately assessed by the ALJ. (Compare AR 24 with AR 54).

The ALJ discussed the medical evidence and assigned weight to the opinions of Dr. Epstein and the M.E. in the following excerpts:

> The record shows that [Plaintiff] has a history of back pain. In July 2011, [Dr. Epstein] performed a consultative orthopedic evaluation at the request of the Social Security Administration. [Plaintiff] complained to [Dr. Epstein] of "compressed vertebrae," pain with sitting, and flat feet. On physical examination, [Dr. Epstein] observed tenderness "over T12 and L1," "sacroiliac joint pain," and pain with straight leg raise testing.
>
> In March 2013, [Plaintiff] visited the emergency departments at Northridge Medical Hospital ("NHMC") and Providence Tarzana Medical Center ("PTMC") with complaints of low back pain. [Plaintiff] told the attending physician at NHMC he experienced back pain after performing yard work and daily chores. He told the attending physicians at both facility [sic] his back pain radiated to his lower extremities. On physical examination, the attending physician at NHMC observed a limp and "mild" weakness in the right lower extremity.
>
> An X-ray study of the lumbar spinal area performed in March 2014 revealed evidence of "moderate" degenerative changes at L5-S1, including disc space narrowing. An MRI study of the lumbar spinal area performed in March 2014 revealed evidence of multilevel degenerative changes, including disc

bulges; loss of disc height; facet arthopathy; and foraminal stenosis.

Between 2014 and 2015, [Plaintiff] complained to treatment providers at Medicina Familiar Medical Group ("MFMG") of back pain and "sciatica." [. . .]

[T]he objective medical evidence does not support [Plaintiff's] allegations. The aforementioned imaging studies of the spine revealed evidence of degenerative changes. They did not reveal evidence of fracture, subluxation, nerve root impingement, or spinal canal stenosis. The record does not contain neurodiagnostic studies of [Plaintiff's] extremities to support his complaints of radicular symptoms. [. . .]

Further, the clinical findings contained in the record largely were unremarkable. [Dr. Epstein] observed evidence of tenderness at various points of the spine and pain with straight leg raise testing. He also observed "functional range of motion of the sacroiliac joint," "adequate" lateral tilt and rotation, and a healed ventral scar. [Dr. Epstein] indicated he did not observe evidence of "significant pain over the lumbar spine." In March 2013, the attending physician at PTMC observed "minimal" tenderness at the lumbar spinal area, negative straight leg raise tests, normal motor strength and reflexes in the extremities, and normal gait, despite [Plaintiff's]

> complaints of back pain and radicular symptoms. In August 2014, [Plaintiff] visited the emergency department at West Hills Hospital and Medical Center with complaints of back pain and spasm. On physical examination, the attending physician observed normal breath sounds, regular heart rate and rhythm, full range of motion in the spine and extremities (without tenderness), and normal motor strength and sensation in the extremities. [Plaintiff's] treatment providers at MFMG observed regular heart rate and rhythm; clear lungs; normal peripheral pulses; normal bowel sounds; symmetrical abdomen (without masses, guarding, or hepatosplenomegaly); normal range of motion in the spine and extremities; negative straight leg raise tests; and normal motor strength and sensation in the extremities. Cumulatively, the objective medical evidence does not support finding that [Plaintiff] is unable to perform basic work activities. [. . .]
>
> In addition to the objective medical evidence, the [ALJ] has considered statements from treating, examining, and non-examining physicians in determining [Plaintiff's] residual functional capacity, as required by the regulations. [The M.E.] opined [Plaintiff] could lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk up to two hours in an eight-hour workday (no more than thirty minutes continuously), and sit without restriction, with no climbing ladders, ropes, or scaffolds, no more than occasional balancing,

9

> stooping, kneeling, crouching, crawling, or climbing ramps or stairs; no exposure to unprotected heights; and no concentrated exposure to vibrations or extreme cold or heat. [The M.E.] opined [Plaintiff] required the ability to take a standing break once per hour (approximately five minutes in duration) at his workstation. This opinion is deserving of significant probative weight because it is supported by the objective medical evidence, which shows a history of complaints of back pain and abdominal pain, as well as anatomical abnormalities of the spine and abdomen, but otherwise mostly normal cardiovascular, musculoskeletal, neurological, and respiratory functioning. [The M.E.] had the opportunity to review and consider the relevant documentary evidence, which lends their [sic] opinions additional probative weight.
>
> Based on his clinical findings and observations, [Dr. Epstein] opined [Plaintiff] could "work with proper motivation including[] sitting, standing and walking no greater than [two] hours." With respect to [Plaintiff's] ability to stand and/or walk, this opinion is deserving of significant probative weight because it is consistent with the other evidence of record, including the objective medical evidence, as discussed above, and the opinion of [the M.E.], which the [ALJ] has determined is deserving of significant probative weight.

(AR 25, 27-28 (citations omitted)).

The ALJ did not err in evaluating Dr. Epstein's opinion. First, as Plaintiff points out, the limitations assessed in Dr. Epstein's opinion were somewhat ambiguous and vague. (Joint Stip. at 5-6). Dr. Epstein's clearest statement regarding Plaintiff's disability status, however, was that Plaintiff "should be able to work with proper motivation." (AR 478). This opinion was offered by a consultative examiner conducting a physical examination for the specific purpose of evaluating the severity of Plaintiff's disability and his ability to work. (AR 477-78). To the extent that Dr. Epstein's report was ambiguous, it was the ALJ's prerogative to resolve this ambiguity, Tommasetti v. Astrue, 533 F.3d 1035, 1041–42 (9th Cir. 2008), and it is incongruous to suggest, without meaningful explanation of the apparent inconsistency, that fully crediting Dr. Epstein's opinion that Plaintiff "should be able to work," (AR 478), actually requires a finding that Plaintiff is fully disabled.

Moreover, the ALJ credited Dr. Epstein's assessment "[w]ith respect to [Plaintiff's] ability to stand and/or walk" because it was "consistent with the other evidence of record, including the objective medical evidence . . . and the opinion of [the M.E.]." (AR 28); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). The ALJ thus implicitly rejected limitations on Plaintiff's ability to sit as lacking support in the medical evidence and inconsistent with the M.E.'s opinion. See Magellanes v. Bowen, 881 F.2d 747, 755 (9th Cir. 1989) ("It is true that the ALJ did not recite the magic

words, 'I reject Dr. Fox's opinion about the onset date because....' But our cases do not require such an incantation. As a reviewing court, we are not deprived of our faculties for drawing specific and legitimate inferences from the ALJ's opinion.").

The Ninth Circuit has disapproved of vague or unsupported conclusions that a medical opinion is credited to the degree that it is consistent with other opinions or objective medical evidence. Cf. Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim."). However, in this case the ALJ's conclusion was preceded and supported by an extensive analysis of the medical evidence of record, including the M.E.'s opinion. (AR 25-28).  It was during this analysis that the ALJ determined that "objective medical evidence does not support the finding that [Plaintiff] is unable to perform basis work activities" and that "the clinical findings contained in the record largely were unremarkable." (AR 27). These determinations were not unreasonable and, with the exception of Plaintiff's specific challenges to this summary discussed supra, Plaintiff acknowledges that the ALJ's summary was fair and accurate. (Joint Stip. at 4). Therefore, the ALJ did not err in evaluating Dr. Epstein's opinion. See Morgan v. Commissioner of Soc. Sec., 169 F.3d 595, 600, 602 (9th Cir. 1999) ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent

with it. . . . [W]e have consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor." (emphasis in original)).

## CONCLUSION

For the foregoing reasons, the decision of the Administrative Law Judge is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: July 28, 2016

```
                            _____/s/_____
                            ALKA SAGAR
                  UNITED STATES MAGISTRATE JUDGE
```